BROWN and BRUNE, for Complainants.
J. MEREDITH, for Defendants.

———

| FRANK H. STOCKETT<br>vs.<br>LEMUEL G. TAYLOR, AND OTHERS. | DECEMBER TERM, 1849. |

A. MORTGAGED to B. property on which C. held the vendor's lien. C. sells it, to pay the balance of his debt. HELD—That the proceeds of sale, after satisfying C.'s debts, are subject to the mortgage to B.; the rights of the mortgagee not being affected by turning the lands into money, the lien of the mortgage attaches upon the surplus proceeds of sale.

Whatever information is sufficient to put a party upon inquiry, is sufficient *notice* in equity.

The purchaser of an equity of redemption, sold under a proceeding against the mortgagor, has as clear a right to redeem as had the mortgagor himself.

Where a party purchases an equity of redemption at a sheriff's sale, made

in legal form, he will not be discountenanced by the Court, when seeking to redeem, because of the inadequacy of the price paid by him. Where, under such circumstances, he runs the risk of buying a worthless title, he will be allowed the benefit of his purchase, if it results advantageously.

[The bill in this case was filed upon the 7th of August, 1849. It alleges that Gustavus R. Barber, being seized of a tract of land called "the President," lying in Anne Arundel County, and of certain lots in the city of Annapolis, executed to Ann Ridgely, now deceased, a mortgage of the said property, by deed dated 10th January, 1840, to secure the sum of $2,000, due by him to her. That on the 20th of January, 1840, the said Ann Ridgely assigned the said mortgage to David Ridgely, by deed of that date, reserving to herself the interest accruing on the said debt, which was still to be paid to her, as provided in the original mortgage. That David Ridgely being about to borrow $2,000 from the Farmers' Bank of Maryland, in order to induce Robert Welch, of Ben., and John W. Whittington, to become endorsers on his note in bank for that amount, conveyed the said assigned mortgage and debt to the said Welch and Whittington, by deed dated 4th September, 1840, in trust to hold the same as security to them from any loss by reason of said endorsement, and in further trust to apply the moneys which might be received by them under said assignment, after satisfying the life estate reserved, as aforesaid, to Ann Ridgely, to the payment of the said note, and the residue, if any, to the said David, and in further trust, to reconvey the same if the said David should pay the note. That the note thus endorsed was discounted by the Bank, on the 8th of September, 1840, and renewed from time to time until the 5th day of June, 1842, when it was protested for $1,550, the sum of $450 having been paid on account thereof by the said David. That at the October Term, 1843, of Anne Arundel County Court, judgments were recovered against the said Welch and Whittington by the Bank, for the balance due on said note—the said David having left the State of Maryland. That after the protest of the said note, the said David, on the 27th day of December, 1842, assigned, in writing, to George E. Franklin, all his remaining

interest in the said mortgage, arising, as he alleged, from the payment by him of the said $450 on account of the said note, to secure a debt due by him to the said Franklin—the said Welch and Whittington assenting to said assignment. That Barber properly paid Ann Ridgely the interest reserved in the assignment to David Ridgely, until her death, which took place in 1845; and the complainant insisted that the said assignment to Franklin, for various reasons, carried with it no substantial interest in the said mortgage. That the said tract of land, called " the President," had been purchased by Barber from trustees in Chancery, on the 19th of October, 1838, and that, at the date of the mortgage to Ann Ridgely, there remained due by Barber to the trustees a portion of the purchase-money. That the trustees recovered a judgment in Anne Arundel County Court against the said Barber for that balance, and on the 12th day of April, 1842, the said land was sold by the sheriff, to satisfy said judgment, to Ezra Sheckell, and the said Sheckell was substituted as purchaser under the decree, with the consent of Barber. That it was then agreed by parol between Barber and Sheckell, that the latter should sell the land, and after paying himself all debts due to him by Barber, and the amount of the purchase-money to be paid to the sheriff, that the residue should be paid to Barber. That the trustees conveyed the land to Sheckell, and that Sheckell sold the same to Robert Sinclair, Sr., and after retaining out of the purchase-money the amount due to him by Barber, and the amount paid by him to the sheriff, there remained of the purchase-money the sum of $1,607 81, with interest, which Sinclair was directed to pay to Barber when it became due; but which, the complainant alleges, was properly payable to Ann Ridgely and her assigns, and should therefore have been applied to the payment of the note of David Ridgely in bank, and then to the payment of Franklin's debt. That Welch and Whittington, fearing that they would be compelled to pay the said note, were about to foreclose the mortgage to them, when Lemuel G. Taylor agreed with them and Barber, that if Barber would assign to him the sum due by Sinclair, he would assume the

payment of the said note—the said endorsers to suspend pro-
ceedings under the mortgage.   That Barber assigned the said
sum, and Sinclair gave Taylor his note for the same, and exe-
cuted to him a mortgage of the farm to secure its payment,
dated 28th August, 1843.   That Taylor, on the 10th of Ja-
nuary, 1834, delivered to the Bank his note, endorsed by Welch
and Whittington, for the full amount due on the note of the
said David Ridgely, and had the Bank's judgments against
Welch and Whittington entered to his use.   That a balance is
now due upon Taylor's note to the Bank.   That Sinclair has
long since paid Taylor the amount of his note to him, and ob-
tained a release of the mortgage.   That at the time of the said
agreement, Barber gave Taylor the authority to receive the
rents of the house and lots in Annapolis, to save him from loss
on account of the said note in bank ; that Taylor received the
rents for some time, and then re-delivered the said property to
Barber, and that Taylor, from various sources, has long since
been more than indemnified for any loss on account of said
note.   That on the 24th day of July, 1849, the Sheriff of Anne
Arundel County offered for sale the said house and lots, under
a judgment due by Barber to the A. & E. R. Railroad Com-
pany, recovered in October, 1848, when the complainant be-
came the purchaser thereof ; that he has paid the sheriff for
the same, and has received from him a conveyance thereof, and
entered into possession.   The bill then prays that an account
may be taken, to ascertain the amount due upon the mortgage
to Ann Ridgely, and that upon the payment thereof by the
complainant, the said mortgage, and the several assignments
thereof, may be released to him, and the judgments against the
said house and lots be entered satisfied, or that the property
may be sold by this Court, and the proceeds brought in for
distribution among those entitled, and for further relief.

The defendants filed their answers, the purport of which
sufficiently appears from the Chancellor's opinion.]

THE CHANCELLOR:

The pleadings in this case are voluminous, and present a

variety of questions; but upon the argument the complainant's counsel narrowed the questions down, so as to limit the inquiry to the proper application of the sum of $1,897 22, received by the defendant, Taylor, from Robert Sinclair, on the 1st of October, 1845, in discharge of the mortgage of the 28th of August, 1843, executed by Sinclair and wife to Taylor, to secure the payment of $1,607 81, which the mortgage recites was due from the mortgagor to Gustavus R. Barber, and by him assigned and transferred to the defendant, Taylor.

The bill alleges that Taylor, in consideration of this assignment, agreed to assume upon himself the payment of a note discounted and held by the Farmers' Bank of Maryland, the money so assigned being, as is alleged, the proceeds of land pledged and bound for the payment of said note.

This agreement Taylor, in his answer denies, and avers, on the contrary, that he received the money from Sinclair in payment of debts due from Barber to him at the date of the mortgage, amounting to the sum of $1,550, and that he has long since paid to Barber the difference between the sum paid by Sinclair and the debt of Barber to him.

There is certainly no proof in the case of a positive nature establishing the agreement, as stated in the bill, though there are circumstances from which it is difficult to escape the conclusion that some such understanding did exist. That Welch and Whittington, who were endorsers upon the note held by the Bank, and to whom David Ridgely, the assignee of the mortgagee, Ann Ridgely, had assigned the mortgage for their indemnity as such endorsers, should have permitted or consented to any other appropriation of the money, is in the highest degree improbable.

But conceding that the case is destitute of direct evidence of such an agreement, and that the circumstances are not strong enough to establish it in the face of the denial in the answer, still it appears to me to be very clear, upon principle and authority, that the money should be so applied.

The mortgaged premises were unquestionably and confessedly bound for this debt to the Bank, the mortgage having been as-

signed to Welch and Whittington, the endorsers of David Ridgely, for their indemnity as such.

Taylor says in his answer, that he was induced to take this debt upon himself, because he ascertained that Welch and Whittington were about to sell the town property to pay the Bank and exonerate themselves; and it appears that he did give his note to the Bank, with Welch and Whittington as endorsers. It is true the sale by the sheriff to Sheckell, and by Sheckell to Sinclair, preceded this assumption of the Bank debt by Taylor; but the money due from Sinclair to Barber had not then been paid to Taylor, his assignee. It still remained to be paid; and the mortgage from Sinclair to Taylor, dated 28th August, 1843, recites, " that Sinclair was indebted to Barber in the sum of $1,607 81, payable on the 1st of October, 1845, for that part of the purchase-money due the said Barber, for the tract or parcel of land sold by him and his wife to Sheckell, and by the latter to Sinclair." This land thus sold by Barber to Sheckell, and by the latter to Sinclair, formed a part of the property previously mortgaged by Barber to Mrs. Ann Ridgely. It was sold to satisfy the purchase-money due from Barber to his vendors, and by an arrangement between him and Sheckell, the said sum of $1,607 81, being part of the price agreed to be paid by Sinclair upon his purchase from Sheckell, was to be paid to Barber. This money then, in the hands of Barber, being a portion of the proceeds of the mortgaged estate, was equally bound by his mortgage with the land itself. When he mortgaged this property to Ann Ridgely, it was bound by the prior lien of the vendors, and after the payment of that prior lien, the surplus proceeds of the sale represented the mortgagor's interest in the land mortgaged, and was subject to the mortgage; the equitable principle being, that under such circumstances the mortgage becomes a lien upon the fund, instead of the interest of the mortgagor in the land. According to the decision of the Chancellor, in *Astor* vs. *Miller*, 2 *Paige*, 68, the rights of the mortgagees are not altered by turning the estate into money, for the Court directs the money to be applied according to the rights of redemption. The same prin-

ciple was asserted and enforced by the Court in the case of *Bartlett* vs. *Gale*, 4 *Paige*, 504, in which it was held, that the lien of the mortgage attached upon the surplus money in the hands of the sheriff, who sold under an elder judgment, and that he could not pay such surplus to the mortgagor.

If, to be sure, Taylor had received the money from Barber, for a valuable consideration paid him, without notice that it was a part of the purchase-money of the mortgage premises, the case might be subject to different considerations; but the very deed under which he claimed, advertised him of the fact that the money was due Barber, "as part of the purchase-money of the land sold by him to Sheckell, and by the latter to Sinclair;" and the registry of the deeds and the admissions of the answer are sufficient to bring home to him, in fact or constructively, knowledge that this land was included in the mortgage, and had been pledged for the payment of the debt to the Bank. Certainly, if the defendant Taylor had not actual knowledge of these circumstances, he had information enough to put him on inquiry, and that is sufficient notice in equity. *Magruder* vs. *Peter*, 11 *G. & J.*, 243. He knew that in fact, or he is to be treated as knowing, that this land was mortgaged by Barber to Ann Ridgely for $2,000; that the mortgage, with a limited reservation, was assigned by Ann Ridgely to David Ridgely, and by the latter to Welch and Whittington, to secure them as his endorsers in Bank to the same amount, and that this surplus remained to Barber, the mortgagor, after paying prior incumbrances upon the land. Knowing all this, the mortgage unquestionably fastened upon the money in his hands and bound it as effectually and firmly as it did in the hands of Barber his assignor. His subsequent conduct is strong to show that he so regarded it. He took the mortgage from Sinclair on the 28th of August, 1843, to secure the payment of this money; and on the 9th of January following, he actually did assume the debt to the Bank, by substituting his note for that of Ridgely, endorsed by Welch and Whittington, the same persons becoming his endorsers. It is true that Taylor in his answer says (and it also appears by

copies), that he took an assignment of the judgments which the Bank had recovered against Welch and Whittington, as the endorsers upon the note of Ridgely; and he alleges that he looks to these parties primarily to secure him against his responsibility to the Bank, though the mortgage may ultimately be responsible to him for the debt.

It does appear that this judgment was so assigned to Taylor by the Bank, but it certainly does not appear that Welch and Whittington had agreed, as between Taylor and themselves, to become primarily bound for this debt; and such an agreement is so improbable, not to say irrational, that it is impossible to presume it.   Taylor says in his answer, that he agreed to take this Bank debt upon himself to prevent Welch and Whittington from selling the town property, as they informed him they proposed to do, and he actually, in the negotiations with the Bank, assumed the attitude of the principal debtor by becoming the maker of the note.   He had also at that time in his hands an assignment of Barber's proportion of the proceeds of the property sold to Sinclair, being a part of the mortgaged property which stood between the endorsers and loss; and yet his pretension now is, that though he had thus in his hands a portion of their security, and though they, upon his assuming the debt, had forborne to proceed against the unsold mortgaged premises, and though he, and not Welch and Whittington, was the principal debtor in the note to the Bank, still because he had taken from the Bank an assignment of the judgments against those parties, they, and not he were primarily liable.   It seems to me impossible to maintain such a position; and I am, therefore, of opinion that the money received by Taylor from Robert Sinclair on the 1st of October, 1845, is applicable to the payment of the mortgage debt.

The complainant in this case purchased the equity of redemption of the mortgagor, Gustavus R. Barber, in July, 1849, sold under an execution issued upon a judgment against him in favor of the Annapolis and Elk Ridge Railroad Company.

That the complainant as the purchaser of the equity of redemption has a right to redeem, has not been, and cannot be

disputed. Claiming an interest by purchase from and under a judgment against the mortgagor, the right of redemption is as complete in him as it was in the mortgagor himself. The authorities are explicit upon this subject. 1 *Powell on Mortgages*, 261, *et seq.*

But it is said the complainant in this case is not entitled to the favorable consideration of the Court, because he gave a very inadequate price for the property, and is a mere speculator without merit, in whose behalf the Court should not actively interpose. The complainant, however, it will be remembered, purchased at a public sale made by the sheriff, after full notice, and it is not pretended that all the requirements of the law to give legal validity to such sales, were not observed. The property was known to be incumbered, and the title involved in doubt and embarrassed with difficulties; and no one could be found, after a long interval, but the complainant who was willing to buy and take upon himself the expenses, risk, and trouble of disentangling the title.

The Railroad Company, the plaintiff in the judgment under which he purchased, makes no complaint, although the sum bid by him at the sheriff's sale covered but a small portion of their debt, and it is more than probable the residue will be lost to them. It has not been stated, and does not appear that the plaintiffs in the judgment made any objection to the sales or are at all dissatisfied with it, nor has any intimation been thrown out that it was not in all respects a perfectly fair transaction, and I cannot, therefore, understand upon what grounds the purchaser is to be denied any of the rights which the title thus acquired by him would, under different circumstances confer. He assumed the risk of buying a worthless title, and if the result should be advantageous to him, I am of opinion he should have the benefit of it.

In order to a final adjudication of the questions arising in this case, it must go to the Auditor to state the necessary accounts between the parties. From what has been stated, it will appear that I am of opinion, that the money received by the defendant Taylor from Sinclair should be applied to the

payment of the mortgage debt; that he is to be credited with the several sums paid by him to the Bank, and that any balance which may remain in his hands after such credits are allowed him shall be applied—firstly, to the payment of what may remain still due to the Bank; and secondly, to the payment of the claim of George E. Franklin, assignee of David Ridgely. If it should appear by the accounts that the mortgage debt is not extinguished and fully satisfied by this application of the money received by the defendant Taylor, or if from any other cause the money so received should prove to be unavailable for that purpose, then I am of opinion that the property purchased by the complainant is liable and must be sold, or may be redeemed by such payment as may hereafter be determined.

[The Chancellor then passed an order in accordance with the foregoing opinion. Four accounts were stated by the Auditor; and on the 8th of May, 1850, the Chancellor passed a decree ratifying accounts A and B, and ordering the complainant to pay to Taylor and Franklin the sum assigned them in said accounts, and the defendant Taylor to pay to the Bank the residue of the amount due on his note : and that upon the payment of the said sums, the mortgages upon the said property should be decreed to be released and the judgments entered satisfied, and the complainant should . hold the said property discharged from all claim of any of the parties to the suit : and that in default of such payment by the complainant or defendant Taylor, by a day limited, the property should be sold by a trustee named in the decree.]

FRANK H. STOCKETT, for Complainant.
A. RANDALL, for The Bank and Franklin.
McLEAN, for Taylor.