HARRIS J. CHILTON *vs.* WALTER B. BROOKS, JOHN C. BROOKS and DERICK FAHNESTOCK, Executors of CHAUNCEY BROOKS.

*Mortgage—Power of Sale—Sec. 12 of Art. 66 of the Code— Parties—Assignment of Mortgage by Corporation—Sale of Mortgaged property by Executors—Purchase by Executors—Annexation Act—Notice of Sale—Inadequacy of Price.*

In a proceeding for the sale of property under a power contained in a mortgage and authorized by statute, it is not necessary to make subsequent incumbrancers parties, as the proceeding is wholly *ex parte*, and other lien holders are allowed by section 12 of Article 66 of the Code, to come in by partition after the sale, and assert their claims on the proceeds.

The omission in the assignment of a mortgage, by a corporation of a part of its corporate name, does not render the assignment void, where the full name is given in the mortgage, and the assignment is endorsed on the mortgage, and authenticated by the corporate seal and the signature of the president of the corporation.

A mortgage to a corporation provided that, in case of any default being made in any condition therein, the said body corporate, its successors and assigns, or P. M. S. its duly constituted attorney or agent, "are hereby authorized and empowered to sell all the property hereby mortgaged, or so much thereof as may be necessary, and to grant the same to the purchaser or purchasers thereof." HELD:

That while the power given to the corporation to sell in case of default, could not be exercised by the corporation, it being an artificial person, it could, as provided by the express language of the mortgage, be exercised by its designated attorney, or assignee being a natural person.

An assignment of mortgage by a corporation, by an endorsement on the mortgage, need not be made by an attorney of the corporation appointed for the purpose, such an assignment being only

a record mode for assigning the debt which carries the mortgage with it.

A sale of mortgaged property by the executors of the assignee of the mortgage, can be made without the previous order of the Orphans' Court, it being simply a proceeding for the collection of a debt.

And the purchase of the property by the executors at such sale, is unobjectionable, as section 14 of Article 66 of the Code, gives to the mortgagee the right to buy at his own sale, and authorizes his legal representatives to do so.

When the mortgage was executed, section 15 of Article 66 of the Code, required land to be sold in the county where it was situated. The mortgaged property was situated in Baltimore County. Subsequently, by the Act of 1888, ch. 98, commonly known as the "Annexation Act," that part of Baltimore County wherein the mortgaged property was situated, was brought within the limits of Baltimore City. HELD:

That the sale, which took place after the "Annexation Act" went into effect, was properly made in the City of Baltimore and on the premises.

Section 792 of Article 4 of the Local Code of 1860, provides that "any mortgagee of property in the City of Baltimore, his assignee, or executor, where a power to sell is contained in the mortgage, may proceed under the general law relating to mortgages, but notices of sale under such power shall be published in two daily newspapers in said city, for the period required by law." By the eleventh section of the Act of 1888, the local laws of Baltimore City are extended to and made applicable in those portions of Baltimore County, which that Act annexes to Baltimore City. HELD:

That as the statute making the annexation, and applying local laws to the annexed territory did not, in terms, make it retroactive, it can only be allowed a prospective operation, and the publication of the time, place, manner and terms of sale of the property in a newspaper published in Baltimore County, as provided in the mortgage, was sufficient.

Where the opinions of witnesses as to the value of the property vary widely, and no other facts appear to discredit the sale, or to raise doubts as to its fairness, inadequacy of price is not a reason for setting it aside.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order of the Court below (WRIGHT J.,) overruling exceptions to the sale, and finally ratifying the same. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Robert R. Boarman*, for the appellant.

*W. B. Trundle*, for the appellees.

IRVING, J., delivered the opinion of the Court.

The questions in this case arise upon exceptions to a sale made by the executors of Chauncey Brooks, the appellees, in the execution of a power of sale which they claim has devolved upon them as the representatives of their testator. The mortgage was executed by Louis Passano and wife, on the 6th of April, 1875, to "the Baltimore Permanent Building and Land Society of Baltimore City," to secure five promissory notes, each for six hundred dollars, payable in one, two, three, four and five years from date. On the same day of its execution, this mortgage was assigned to Chauncey Brooks, under the seal of the corporation and the signature of the president thereof. The assignment was in the short form prescribed by the Code, viz., "for value received, the Baltimore Permanent Building and Land Society doth grant and assign unto Chauncey Brooks the within mortgage." This assignment was recorded with the mortgage.

The mortgage contained this clause: "But in case of any default being made in any condition of this mortgage, then these presents are hereby declared to be made in trust, and the said body corporate, its successors and

assigns, or Philip M. Snowden, its or their duly consti-
tuted attorney or agent, are hereby authorized and
empowered to sell all the property hereby mortgaged, or
so much thereof as may be necessary, and to grant the
same to the purchaser or purchasers thereof, or to his or
their executors, administrators or assigns; which sale
shall be made in the following manner: by giving at least
twenty days notice.of the time, place, manner and terms
of sale in some newspaper published in Baltimore County
aforesaid, and the proceeds thereof to apply first to the
payment of all expenses incident to such sale; secondly,
to the payment of all moneys owing hereunder, whether
the same shall have matured or not, and as to the
balance, to pay it over to the said Alice F. Passano, her
executors, administrators or assigns.''

Three sets of exceptions were filed, and they will be
considered in their order of presentation.

1. Exception was taken because certain subsequent
incumbrancers were not made parties.    This was unten-
able, because the proceeding authorized by statute is
wholly *ex parte and without process;* and other lien holders
are allowed to come in by petition and assert their claims
on the proceeds.    2 Code, Art. 66, sec. 12.

2. The second set of exceptions assigns three grounds of
objection to the sale, viz., 1. That there was no author-
ity to sell; 2, that no sufficient notice was given of the
sale; and 3, irregularities on the face of the proceedings.
Under these exceptions numerous positions have been
assumed and points made by appellant's solicitor.    The
first point in this set of exceptions, as to the want of
authority of the executors of Chauncey Brooks to sell
under the assignment made to their testator, was aban-
doned in the lower Court, according to the Judge's
opinion, except as to the omission of the words ''of Bal-
timore City'' in the description of the corporate name
in making the assignment.    As the exception is renewed

in this Court, we will consider it in all its aspects. 1. In respect to the objection that the omission of the words "of Baltimore City" from the name of the assignor in the assignment makes the assignment inoperative, all that is necessary to say is that, as the mortgage gives the full name of the corporation to which it is given, and on the back of it the assignment is endorsed; and as that assignment is made under the *seal of the corporation*, and over the signature of the president of the corporation, who is named in the certificate of the justice of the peace taking the acknowledgment and certifying the affidavit of the *bona fides* of the consideration, as the *president of that corporation* making the oath, it is sufficiently clear that the assignment was the act of the corporation holding the mortgage, and not of some other corporation of kindred name. The designation therefore being sufficiently clear to distinguish it from other corporations, and authenticated by the seal of *this corporation,* there was no possibility of mistake, and the requirements of the assignment were gratified. The inadvertent omission of that part of the corporate name was, in our opinion, immaterial. 2 *Kent's Com.*, 293; *Hagerstown Turnpike Co. vs. Creeger*, 5 *H. & J.*, 122.

2. It is contended that the executors acted without authority, because the power was given to the corporation to sell in case of default, and as a corporation can not execute such power, under the decisions, *Frostburg Mutual Building Association vs. Lowdermilk*, 50 *Md.*, 175, and *Queen City Perpetual Building Association vs. Price*, 53 *Md.*, 398, the corporation could not by assignment give to an assignee a right to do what it could not do,— something it did not possess. All that was decided in those cases, adversely to the power in the mortgages there involved, was that the power, being given to a corporation *and to no one else*, the power was void. It is necessary that some one capable of executing the power

should be designated as authorized to execute it. For the want of such designation in the 53 *Md.* case, the power was declared void; and in *Lowdermilk's case* in 50 *Md.*, nothing was decided but the inability of a corporation to execute the trust given by the power. In 53 *Md.* the *assignees* of the mortgage were not named as clothed with the power, whilst here they are, by express language, mentioned as authorized to execute it, and in the alternative a designated attorney is authorized to execute it. It is conceded that the attorney who is named could have executed the power, but it is insisted that as to the assigns of the grantee the power was void. We do not think that is a warranted inference from the cases cited. On the contrary, we think that, in the building association case in 53 *Md.*, it is plainly intimated that where *assignees* of the corporation are named as authorized to sell they may execute the power, although their assignor could not have done so. The Court in that case says, "if any *other person than the mortgagee or his assigns be intended* by the parties to the mortgage to execute the power, he or they must be specially named in the power." The assignee, whoever he may be, (if not a corporation) may execute the power as if designated by name, while an attorney may do it only when specially named. This seems to be the natural implication of the language used in 53 *Md.*; and we think those cases do not conflict in any degree with the view we now express in upholding the power in this case. We think the assignee may execute the power, *if the power so states.*

3  On this point one other objection is urged, viz., that the assignment is not made by an attorney appointed by the corporation, and the appointment does not appear in the instrument if he was the attorney. If the assignment were a formal deed requiring acknowledgment, that objection would be well taken, but it is not. It is in a

short form, (simply attested,) on the back of the mortgage, and we can see no reason why an artificial person may not use that form as well as a natural person. There is no inhibition of it. Any one may use that form. Its effect is but the same as an *assignment of the debt*—the notes. The mortgage has no independent existence apart from the debt. *The debt* is the principal thing and the mortgage only the incident. Such an assignment of the mortgage is but a record mode for assigning the debt which carries the mortgage with it, and *such assignments* are not, in our view, void for the reason relied on. The mortgage having annexed a power of sale as additional security to the mortgagee, and the mortgagor having stipulated that the assignees of the grantee or mortgagee might execute that power, when the assignment was made the right of the assignee to execute it vested, and on the death of the assignee his executors took the right to proceed as they have done. *Berry vs. Skinner*, 30 *Md.*, 567; *Dill vs. Satterfield*, 34 *Md.*, 52; *Code, Art.* 66, *sec.* 20; *Harnickell vs. Orndorff*, 35 *Md.*, 341.

4. But the appellant's solicitor contends, that as the executors made sale of property, they could not do so without the previous order of the Orphans' Court, and no such order was obtained. He relies on section 296 of Art. 93 of the Code. The learned Judge of the Court below answers this objection most conclusively in this statement: "They were simply collecting a debt due in a legal manner, which it was their duty to do; and I can see no more necessity for an order from the Orphans' Court in this case than there would have been to enable them to institute suit for the collection of any other debt due the estate." In this view the Circuit Court was certainly right. It was not personal property they were selling. The property being sold was not the property of Chauncey Brooks, over which the Orphans'

Court had control. The mortgagor was still the substantial owner, and Brooks had nothing but the bare legal title as a security for his debt. *Annapolis & Elkridge Railroad Co. vs. Gantt,* 39 *Md.,* 140. The Orphans' Court had no jurisdiction to pass any order for the sale of the mortgaged premises for the payment of the mortgage debt.

5. The objection to the sale on the ground that the executors purchased at their own sale is equally untenable. The statute expressly gives to the mortgagee the right to buy at his own sale; and his legal representatives are also expressly authorized to do so. Code, Art. 66, sec. 14.

6. The appellant's solicitor has contended with great earnestness that the Act of 1888, chapter 98, commonly known as "the Annexation Act," has the effect to abrogate the agreement with reference to the notice which it provides shall be given of the sale, and that therefore the power was destroyed, and the parties were remitted to regular proceedings in equity for the enforcement of their lien. He rests his contention on the fact that by the annexation Act the property has been brought within the city limits. This, he contends, prevents the property being sold in Baltimore County, and that inasmuch as the statute (Code, Art. 66, section 15) requires the land to be sold in the county where it lies, and as the land now lies in Baltimore City, the power can not be exercised, and must fall. The case of *Webb vs. Haeffer,* 53 *Md.,* 190, is his reliance. In *Webb's* case the mortgage was made in the face of the law and in contravention of it. Notwithstanding the existence of section 16, Art. 66, which requires all property sold under a power in the mortgage to be sold in the county where the land lies, the parties to that mortgage made an agreement that the land should be sold in *Baltimore* City. This agreement being against the policy the law

had established, and in contravention of the statute, the power could not be executed according to its terms and was therefore declared void. In this instance the power, when given, was entirely allowable and in consonance with the statute. It was part of the contract of the parties, and a most important part of it, in giving a summary remedy for the collection of the debt, if default was made in respect to the same. It is a very different case from *Webb vs. Haeffer*, 53 *Md.*, 190. The power being legal when made must be upheld unless the statute annexing the land to Baltimore City has the effect to render the contract void.

7. In the execution of the power the mortgage provides for twenty days notice, for at least twenty days, in some newspaper published in *Baltimore County*, of the time, place and terms of sale, and of the manner of it. This notice was given; and, in addition to that twenty days, notice was given in the Baltimore Sun published in Baltimore, and the Daily Record, another paper published in Baltimore City, for fifteen days. In addition to this a notice was kept posted on the property all the time it was in the papers. The appellant's proposition is, that, by reason of the annexation Act, this notice was not sufficient. Section 792 of Art. 4 of the Local Code of Baltimore City provides "that any mortgagee of property in the City of Baltimore, his assignee, or executor, where a power to sell is contained in the mortgage, may proceed under the general law relating to mortgages, but notices of sale under such power shall be published in two daily newspapers in said city, for the period *required by law.*" The sale was made on the premises, which was, when the sale was made, within the City of Baltimore, but was, when the mortgage was executed, within the limits of Baltimore County. Being made in the city, or within its jurisdiction, the claim is, that the city law, above quoted, applied and the notice

was insufficient. Being made on the premises it was made within the geographical limits of Baltimore County when the power was given, and was then a suitable place for the sale. A much larger notice having been given than was agreed on in the mortgage, there can in fact be no complaint that sufficient *publicity* was not given of the proposed sale, and no loss can be attributed to not giving more notice of the sale. There is therefore no equity at the base of the contention. Two answers to this contention have been given by the appellee's solicitor, and we think it very clear that this objection to the sale can not be maintained. By the 11th section of the Acts of 1888, chapter 98, the local laws of Baltimore City are extended to and made applicable in that part of Baltimore County, which that Act annexes to Baltimore City. In order that this provision may apply to and control this sale, we must give the Act a retroactive operation, and must also hold that so far as Baltimore City sales are concerned, parties can not agree upon less than twenty days notice of sale. If the Act does not have a retroactive effect it will not be material whether parties can, in Baltimore City, agree on less than twenty days notice of sale. It has frequently been decided, both in England and in this State, that a statute ought not to have a retroactive effect given to it, "unless its words are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature could not be otherwise satisfied; and especially ought this rule to be adhered to when such a construction would alter the pre-existing situation of the parties, and affect or interfere with their antecedent rights." *Herbert and Hairston vs. Grey,* 38 *Md.,* 529; *Johnson vs. Johnson,* 52 *Md.,* 668: *Bacon's Ab., Statute, C.* 439; *Moon vs. Durden,* 2 *Exchequer Rep.,* 22; *Vansittart vs. Taylor,* 4 *Ellis and Blackburn,* 910. In the last cited case Baron PARKE says, it is a clear rule of law, "the

Chilton *vs.* Brooks.

language of a statute is *prima facie* to be construed as prospective only. It could never be the intention of the Legislature to alter the effect of agreements to which the parties had come before passing the Act.'' The statute making the annexation and applying local laws to the annexed territory does not, in terms, make it retroactive, and, applying the rules laid down in the cases just cited, it can only be allowed a prospective operation. Disallowing that contention on the part of the appellant, the notice would be more than a compliance with the terms of the agreement, and the sale being on the premises, which was geographically a part of Baltimore County when power was given, but within Baltimore City when executed, the terms of the power have been both equitably and literally fulfilled.

8. As to the last exception,—inadequacy of price obtained,—but little need be said. The testimony is by no means uniform. Opinions of witnesses vary widely. In itself, it was not pressed by appellant as sufficient to invalidate the sale, but only to be considered in connection with other facts which might discredit it. No other facts appear which discredit it, or raise doubts as to its fairness. All the other exceptions have been overruled, and this is clearly not a reason for setting the sale aside. The order overruling the exceptions and confirming the sale will be affirmed.

*Order affirmed, and*
*cause remanded.*