## L. CLARK MADORE *v.* ALBAN C. THOMPSON, TAX COLLECTOR.

[No. 30, April Term, 1928.]

*Decided June 20th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER. ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*William A. Gunter,* with whom was *William H. Cole* on the brief, for the appellant.

*Walter C. Capper,* with whom were *Lloyd Lowndes* and *Paul L. Hitchins* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Lawrence F. Shaffer was the owner of improved real estate on Cumberland Street in Cumberland, Maryland, upon which a certain Mary E. Crown and Annie R. Oliver held a first mortgage lien given on October 4th, 1918, to secure an indebtedness of that date for $3,900; and upon which the appellant, L. Clark Madore, held a second mortgage lien to secure the payment to him of the mortgagor's promissory note dated September 24th, 1920, for the sum of $3,500. The first mortgage lien was foreclosed. The property was sold on November 30th, 1927, for the sum of $8,750. The appellant as second mortgagee filed his claim in the mortgage

foreclosure proceedings, and an account was stated, and the proceeds of sale distributed. The auditor charged against the proceeds of sale the costs and expenses of foreclosure, and the state and county and municipal taxes levied upon the real property sold for the years 1925, 1926 and 1927, as they were due and in arrear on the day of the sale. This left a residue which he applied to the payment in full of the first mortgage indebtedness on the property; and then, deducting the sum of $598.98 for the state and county taxes due and in arrear for 1924, 1925, 1926, and 1927, on account of the assessment against the mortgagor's personal property, the auditor distributed the remainder to the appellant, whose second mortgage lien it failed to pay to the extent of $1,018.07.

The mortgagor had made a deed of trust on October 24th, 1927, for the benefit of creditors, and his trustee had sold all his personal property for the sum of $400, and there were no other assets. So, after the deduction of the costs and expenses, the fund in the hands of the trustee was insufficient to pay the taxes due and in arrear on the personalty.

The appellant excepted to the allowance at his expense of the taxes against the personalty, but the chancellor dismissed his exception on the ground that, as the second mortgagee had not instituted the foreclosure proceedings, he was not within the protection of section 74 of article 81 of the Code, and, therefore, the residue of the proceeds of the foreclosure sale that were left, after the satisfaction of the expense of the proceedings, the payment of the amount of taxes attributable to the assessment on the mortgaged premises, and the discharge in full of the first mortgage debt, should be applied first to the payment of the taxes due and in arrear on account of the personal property of the taxpayer, and the surplus should then be devoted to the liquidation of the second mortgage lien. The position of the chancellor is in conflict with the construction adopted in the decision of this tribunal in *Thompson v. Henderson, ante,* page 665.

It is unnecessary to quote from so recent an opinion or to restate its grounds in a case plainly within the ruling there

made. If the owner of the second mortgage lien had enforced his claim against the property either by a bill for foreclosure or under the power in his mortgage, the sale would have been by a ministerial officer, and no other taxes would have been payable thereout except those upon the property being sold under the second mortgage, because of the operation of section 74 and of the insufficiency of the purchase price to pay in full the amount due under the second mortgage. But the second mortgage lienor did not exercise his power of sale or file a bill for foreclosure and, because the holder of the first mortgage lien had previously begun foreclosure proceedings of the same premises, and chancery had custody, the holder of the second mortgage was compelled to assert his lien to the fund brought into court by the ministerial officer selling under the first mortgage the mortgaged premises.

The effect of this mortgage foreclosure upon the other lien creditors is well stated by Judge Urner in *Strohmeyer v. Remson,* 135 Md. 439, at p. 443 : "The contract in the mortgage for such a power was authorized by statute, which provides also that a sale made in pursuance of the power, 'When confirmed by the court, and the purchase money is paid, shall pass all the title which the mortgagor had in the said mortgaged property at the time of the recording of the mortgage,' and that 'any person claiming an interest in the equity of redemption may apply to the court confirming the sale to have the surplus of the proceeds of sale, after payment to the mortgagee of his claim and expenses, paid over to such person, or so much thereof as will satisfy his claim, and the court shall distribute such surplus equitably among the claimants thereto.' Code, art. 66, secs. 6, 11, 12. By these provisions the extent of the title to be sold under the power in the second mortgage was clearly defined, and the rights of the subsequent lienors were fully protected. There was consequently no occasion to resort, as suggested, to a bill for foreclosure to which the first and third mortgagees might be made parties." *Chilton v. Brooks,* 71 Md. 445, 448; *Leonard v. Groome,* 47 Md. 499, 504, 505; *Boynton v. Remson,* 133 Md. 109; *Hag-*

*erstown v. Groh,* 101 Md. 560, 564; *Stockett v. Taylor,* 3 Md. Ch. 537, 542; *Lee v. Boteler,* 12 G. & J. 323.

Therefore, the sale under the first mortgage was of all the mortgagor's interest in the land at the time of the recording of the mortgage; and the ministerial officer making the sale received into his hands and brought into court the entire proceeds of the sale of this interest for distribution, after the payment of the costs and expenses and taxes, not only to the mortgagee under the first mortgage deed, but to any person claiming an interest in the equity of redemption. If the debt under the first mortgage had been equal to the combined indebtedness of the first and second mortgage, there would be the same amount of deficit and the ministerial officer selling would, under section 74, have not paid any of the taxes levied upon the assessment of the mortgagor's personal property. As it is, the mortgagee holding the second mortgage bears the burden of paying the taxes on the particular property sold, and to cast upon him the additional payment of all other taxes due by the mortgagor on account of other real and personal property is to produce a situation which the Act of 1892, ch. 518, was intended to prevent. As against those holding a lien or encumbrance upon the property sold, this act so amended the law that only the taxes on the particular property sold are to be paid out of the proceeds of the sale. This is clearly indicated in *Parlett v. Dugan,* 85 Md. 407, 410, 413, where it is said: "We might refer more at length to the Act of 1892, ch. 518, amending section 64 of article 81, which indicates the intention of the Legislature to confine the priority and payment of taxes to the proceeds of the sales of the property from which such taxes are due, unless, of course, specially provided for by some other law. For many years the statute required the party selling to pay *all* taxes due and in arrear from the party whose property was sold, but the Act of 1892 amended it so as to only require payment of the taxes due and in arrear on the property sold." *Union Trust Co. v. Belvedere Co.,* 105 Md. 526. While the court did not profess to cover all the phases of the subject matter, it left no

doubt that as against all save the taxpayer, his personal representatives, and unsecured creditors, no taxes could be paid by the ministerial officer except those due and in arrear on the property sold. Under the given conditions and although impairing the means of enforcing the collection of taxes, the legislative intent was to preserve the proceeds of sale of the particular real or personal property being sold by a ministerial officer for the benefit of those having liens or encumbrances on or becoming the purchasers of the property, by excluding, as against them, all taxes due and in arrear which did not arise on account of the property sold.

It follows that the exceptions of the appellant to the audit filed on March 14th, 1928, objecting to the allowance of $598.98 for state and county taxes on the personal property of the mortgagor, should have been sustained, and that the decree of March 15th, 1928, overruling the exceptions and ratifying the audit, must be reversed to that extent.

*Decree of March 15th, 1928, reversed, with costs, and cause remanded for further proceedings in conformity with this opinion.*