C. ARTHUR ROBERSON v. N. D. MATTHEWS AND NORTH CAROLINA JOINT STOCK LAND BANK AND N. D. MATTHEWS v. C. ARTHUR ROBERSON AND B. R. JENKINS, TRUSTEE.

(Filed 27 January, 1931.)

1. **Mortgages H p—Inadequacy for purchase price alone is insufficient ground for setting aside foreclosure sale.**

    Where a deed of trust has been foreclosed by the trustee in conformity with the power of sale, and the sale accordingly made is sought to be set aside in equity for fraud, inadequacy of the purchase price must be coupled with some other inequitable element to be sufficient, and mere inadequacy of purchase price standing alone is insufficient to entitle the plaintiff to the relief sought.

2. **Same—C. S., 2594(5), has no application to mortgages given prior to passage of the act, and is not ground for setting aside a fore-closure of a mortgage given prior thereto.**

    C. S., 2594(5) has no application to mortgages given prior to its passage and it does not operate to wipe out a valid debt existing at the

time it became effective, and it is not a ground for setting aside a fore-
closure of a mortgage given before the passage of the act in an action
by a subsequent mortgagee.

**3. Same—Evidence of whether purchaser at sale was agent for trustee
held for jury in action to set aside foreclosure sale.**

Where one acting for the trustee in a deed of trust becomes the pur-
chaser for the trustee, equity has the power to set the sale aside, and
where there is evidence thereof in a suit to set aside the foreclosure sale
the question is for the jury to decide as to the fact of such agency under
proper instructions from the court.

CIVIL ACTION, before *Moore, Special Judge,* at April Term, 1930, of
MARTIN.

The evidence tended to show that prior to 2 August, 1901, J. W. H.
Coburn owned certain land in Martin County. On 2 August, 1901,
Coburn and wife executed a deed of trust on approximately 112 acres
of land to B. R. Jenkins, trustee, for L. E. Ricks, to secure the payment
of a note of $500.00, payable 1 January, 1902. Thereafter, on 29
January, 1923, J. W. H. Coburn and wife executed and delivered to the
First National Trust Company, trustee for the North Carolina Joint
Stock Land Bank, a deed of trust to secure a note for $6,600 held by
said Land Bank. This deed of trust covered 212.4 acres of land and
included the 112 acres above referred to, covered by the Jenkins deed
of trust. Default was made in the payment of the Lank Bank note,
and said land was duly sold and a deed was made by the First National
Trust Company, trustee, to the North Carolina Joint Stock Land Bank
for said 212.4 acres of land. Said deed was dated 20 April, 1927, and
recorded 16 May, 1927. Subsequently the North Carolina Joint Stock
Land Bank sold the property to N. D. Matthews by deed dated 29
September, 1927. On 15 November, 1927, Jenkins, trustee in the first
deed of trust, dated 1901, advertised for sale under said deed of trust
the 112 acre tract, and a deed was made by B. R. Jenkins, trustee, to
C. Arthur Roberson. This deed from Jenkins, trustee, recites that the
land was sold on 21 December, 1927, and Roberson became the last
and highest bidder for the same at the price of $300.

Hence, we have this situation: Matthews claims 212.4 acres of land
by virtue of deed from the North Carolina Joint Stock Land Bank, and
Roberson claims 112 acres of the same land by virtue of deed from
Jenkins, trustee, to him. Matthews was in possession of the land, and
on 8 January, 1929, Roberson instituted a suit against Matthews and
the Joint Stock Land Bank, alleging that he was the owner of 112
acres of the land, and that Matthews was in the wrongful possession
thereof. On 23 January, 1929, Matthews and the North Carolina
Joint Stock Land Bank instituted suit against Roberson and Jenkins,

trustee, alleging that the purported sale of the land by Jenkins, trustee, under power contained in the deed of trust of 1901, was irregular and void in that the purchase price paid by Roberson was grossly inadequate, and that in fact Roberson was acting as agent for Jenkins, trustee, at the time of the sale. The evidence produced at the trial tended to show that the note given by Coburn to Ricks in 1901 was sold by Ricks to Jenkins, trustee, in said deed of trust, and that Jenkins held the note and received payments thereon from time to time made by the mortgagor. The note was a sealed instrument and the last payment was made on 13 October, 1922. On 12 November, 1927, Jenkins, trustee, owner and holder of the note, transferred the same to C. Arthur Roberson, the plaintiff in the first suit. Three days thereafter, to wit, on 15 November, 1927, Jenkins, trustee, proceeded to advertise the land under the deed of trust of 1901. Matthews and the Land Bank were notified of the sale. There was also evidence tending to show that the land in controversy was worth from $2,500 to $4,000.

Roberson, the plaintiff in the first suit, was related by marriage to Jenkins, the trustee. Roberson testified: "In his old age he got me to look after some of his business affairs for him. Mr. Jenkins' financial condition was pretty good. . . . I saw an attorney at the time the note was transferred. We saw attorneys in regard to that. I did not especially want the note. The proposition of transfer was made to help Mr. Jenkins straighten out his business. I do not remember our attorney telling us it would be necessary to get the note in the hands of some one else before Mr. Jenkins could advertise and sell. Mr. Jenkins was getting old and was not able to straighten it out—disabled to look after it. . . . The transfer was made just to help him straighten out his business—to help him settle up his affairs." Roberson further testified that he paid $490 to Jenkins for the note. It seems that Jenkins died pending the litigation because Roberson testified that he did not pay cash to Jenkins but gave him a note. He testified further: "The note I gave him was found among his papers and came into my hands marked already paid as far as I can tell."

There was also evidence that Coburn, the mortgagor, sold 38 acres of the land covered by the deed of trust of 1901 to one Vanorthwick. The Vanorthwick deed was dated 5 January, 1920. Another tract of said land, containing about 22 acres, was sold by Coburn to one Roebuck. Roberson released the Vanorthwick tract by a quitclaim deed upon the payment of a certain amount on the note.

The following issues were submitted to the jury:

1. "Is the note made by J. W. H. Coburn to L. A. Ricks, held by C. Arthur Roberson, barred by the ten-year statute of limitations?"

2. "Is said note and deed of trust securing same, being the deed of trust recorded in Book CCC, page 580, conclusively presumed to have been paid so far as N. D. Matthews' lands are concerned by virtue of C. S., 2594(5)?"

3. "Did C. Arthur Roberson, in releasing lands of Vanorthwick release all other land embraced in deed of trust under which he claims?"

4. "What is balance due, if any, on note from J. W. H. Coburn to Ricks, now held by C. Arthur Roberson?"

The judge instructed the jury to answer the first issue "No"; the second issue "No"; the third issue "No"; the fourth issue "$371.75 with interest from 21 November, 1927."

The pertinent portion of the judgment is as follows:

"It is now upon motion considered and adjudged by the court that the deed from B. R. Jenkins, trustee, to C. Arthur Roberson . . . be canceled of record. It is further adjudged that the foreclosure sale conducted by B. R. Jenkins, trustee, on 21 December, 1927, is void and of no effect, and it is, therefore, considered and adjudged by the court that there is a balance due on the note from J. W. H. Coburn to L. A. Ricks, said note being now held by C. Arthur Roberson, the sum of $371.75 with interest thereon from 21 November, 1927, and it is further adjudged that said amount constitutes a lien upon all the lands described in the deed of trust from J. W. H. Coburn and wife to B. R. Jenkins, trustee for L. A. Ricks."

From the foregoing judgment both parties appealed.

*L. A. Critcher and J. C. Smith for Roberson.*
*A. R. Dunning and W. G. Mordecai for N. D. Matthews and North Carolina Joint Stock Land Bank.*

BROGDEN, J. Did the trial judge rule correctly in setting aside the sale by Jenkins, trustee, to Roberson, and the deed made pursuant thereto?

There is no evidence that there was any actual fraud, oppression, or unfairness in advertising and selling the land. Moreover, the sale was properly advertised and the deed of trust empowered the trustee to appoint "a day and place of sale," etc. There was evidence that the note secured by the deed of trust had not been barred by the statute of limitation. Therefore, the power to set aside the sale and deed must be based upon one or all of three theories, to wit, (a) that the purchase price was so grossly inadequate as to shock the conscience of a court of equity; (b) the application of C. S., 2594, subsection 5; (c) that the purchaser Roberson was at the time of the sale, agent for the trustee and acting for said trustee in conducting the sale and taking title to the property.

The first theory cannot be maintained upon the evidence offered at the trial. Mere inadequacy of purchase price alone is not sufficient to upset a sale when duly and regularly made. "But gross inadequacy of consideration, when coupled with any other inequitable element, even though neither, standing alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice between the parties." *Weir v. Weir,* 196 N. C., 268, 145 S. E., 281.

Neither can the second theory be maintained. Indeed, the trial judge instructed the jury that C. S., 2594, did not apply. This ruling was correct. *Hicks v. Kearney,* 189 N. C., 316, 127 S. E., 205. That decision declares the law to be that C. S., 2594, subsection 5, has no application to a mortgage given prior to the passage of that statute nor does it wipe out a valid debt existing at the time the statute took effect.

The third theory presents the real question upon this record. The trustee was the owner and holder of the note secured by the deed of trust. Said trustee transferred the note to a kinsman by marriage, and three days thereafter the land is advertised for sale. The purchaser, Roberson, testified that "the purpose of the transfer was made to help Mr. Jenkins (trustee) straighten out his business. . . . Mr. Jenkins was getting old and wasn't able to straighten it out, disabled to look after it. . . . I saw Mr. Jenkins right often. In his old age he got me to look after some of his business affairs for him."

Upon this evidence and other evidence in the record, the question arises: Was Roberson, the purchaser, the agent of Jenkins, the trustee, in making the sale, and thereafter acquiring title to the property pursuant to such sale? The general principle pertinent to this phase of the case was thus expressed by *Hoke, J.,* in *Owens v. Mfg. Co.,* 168 N. C., 397, 84 S. E., 389: "In exercising such a right, however, the utmost degree of good faith is required, the mortgagee being looked upon as a trustee for the owner as well as the creditor, and, in applying the principle, it is very generally held that such a mortgagee is not allowed, either directly or indirectly, to become the purchaser at his own sale, and where this is made to appear the transaction, as between the parties and at the election of the mortgagor, is ineffective as a foreclosure, and the relationship of mortgagor and mortgagee will continue to exist. . . . Under well considered decisions here and elsewhere, the position extends to the case of assignees of the mortgage or the debt secured by it when it is shown that such an assignee, by himself, his agent or attorney, was in control and charge of the sale; the mortgagee only participating by allowing the use of his name for the purpose." *Joyner v. Farmer,* 78 N. C., 196; *Morris v. Carroll,* 171 N. C., 761, 88 S. E., 511; *Jessup v. Nixon,* 199 N. C., 122.

An examination of the record discloses that the third theory was not submitted to the jury, and the question of agency upon the facts disclosed is essentially an issue of fact. If it shall be determined that Roberson, the purchaser, was acting as agent for the trustee, Jenkins, then a court of equity has the power to set aside the sale and the deed pursuant thereto.

Wherefore, the cause is remanded for further proceedings.

Reversed and remanded.