CERTAIN-TEED PRODUCTS CORPORATION v. R. M. SANDERS; J. C. SEDBERRY, TRUSTEE; LYNN S. CHALLIS; T. FRED CHALLIS; HERBERT HOWZE AND WIFE, VIOLA HOWZE; R. E. McDANIEL, TRUSTEE; AND S. A. DOVER, JR.

(Filed 14 April, 1965.)

**1. Pleadings § 28—**

Plaintiff must make out his case *secundum allegata* and recovery must be predicated upon allegations of the complaint.

**2. Mortgages and Deeds of Trust § 19—**

Where at the time of foreclosure an installment of the debt was due and in default, the right to foreclose may not be denied for an asserted oral agreement between the trustor and trustee, entered into after the execution of the instrument, that no payment of the debt would be required until after the completion of a contemplated house on the property, since such agreement is not supported by any consideration.

**3. Mortgages and Deeds of Trust § 26—**

Notice of foreclosure under the deed of trust is sufficient if given by advertisement in compliance with the statute, and no personal notice is required to be given the *cestui* or the holder of a second lien.

**4. Mortgages and Deeds of Trust § 39—**

The fact that the *cestui* in a purchase money deed of trust knows that the trustor had begun the construction of a house on the property and orally promised the trustor that no payment need be made on the deed of trust until the completion of the house, and then foreclosed prior to the completion of the house, confers no right upon subsequent lienees to attack the foreclosure on the ground of such inequitable conduct, since the promise of forebearance was not for the benefit of subsequent lienees.

**5. Contracts § 14—**

A stranger to a contract may not assert any rights thereunder unless he is a third party beneficiary, and the test of whether he is the third party beneficiary is whether the parties to the agreement intended he should receive a benefit therefrom which might be enforced in the courts.

**6. Mortgages and Deeds of Trust § 31—**

Where foreclosure sale is held in accordance with provisions of the deed of trust and preliminary report of the foreclosure is filed in the office of the clerk as required by G.S. 45-21.26 and no upset bid is filed, confirmation of the sale by the clerk is not prerequisite to the execution of a deed by the trustee to the last and highest bidder. G.S. 45, Art. 2A.

**7. Mortgages and Deeds of Trust § 39—**

Inadequacy of the purchase price alone is insufficient to upset foreclosure under the power contained in a deed of trust, and G.S. 45-21.34, providing the right to enjoin consumation of a foreclosure for inadequacy of the purchase price, does not apply after foreclosure has been consumated in conformity with law.

APPEAL by defendants Sanders, Challis and Dover from *Campbell, J.,* April 6, 1964 Schedule "B" Civil Session of MECKLENBURG, docketed and argued as No. 234 at Fall Term, 1964.

Action instituted August 6, 1963, to declare void (1) a foreclosure sale made by J. C. Sedberry, Trustee; (2) a deed from Sedberry, Trustee, to defendant Sanders; (3) a deed by defendant Sanders to defendant Lynn S. Challis; (4) a deed from defendants Challis to defendant Dover; and (5) a deed of trust executed by defendant Dover securing a balance purchase price note to defendants Challis.

A demurrer filed by defendants Sanders, Challis and Dover was overruled by Bone, J., and thereafter said defendants (appellants) filed a joint answer. An answer was filed by defendant McDaniel, Trustee, which admitted all allegations of the complaint. Defendants Howze did not answer or otherwise plead.

Facts established by the pleadings include the following: Defendant Sanders sold to defendants Howze for $750.00 a vacant lot (50 by 150 feet) fronting on Erie Street, Charlotte Township, Mecklenburg County, N. C. After defendants Howze had paid $155.00 of said purchase price, Sanders in July 1959 conveyed said lot to defendants Howze by deed filed for record on July 30, 1959, and recorded in Book 2070, Page 491, in the Office of the Register of Deeds for Mecklenburg County; and contemporaneously defendants Howze conveyed the lot to J. C. Sedberry, Trustee, as security for their balance purchase price note for $595.00 to Sanders, which deed of trust was filed for record on July 30, 1959, and recorded in Book 2087, Page 22, said Registry. The said note provides for the payment of $595.00, "with interest at the rate of 6% from date . . . payable $20.00 per month beginning on the 6th day of July and a like amount on the 6th day of each and every month thereafter until the entire indebtedness is paid in full."

Pursuant to a notice of (foreclosure) sale under said deed of trust, purportedly signed by Sedberry, Trustee, which Sanders caused to be published in the Mecklenburg Gazette, the property described in said deed of trust was sold at public auction on March 5, 1962, at which time Sanders "became the last and highest bidder for the price of $300.00 subject to unpaid taxes and assessments for paving, if any." On March 27, 1962 Sedberry, Trustee, conveyed said property to Sanders by deed recorded in Book 2320, Page 271, said Registry. The Clerk of the Superior Court of Mecklenburg County made no order confirming said foreclosure sale or directing the execution and delivery of said trustee's deed.

On June 7, 1962 defendant Sanders conveyed said property by (recorded) deed to his daughter, defendant Lynn S. Challis; and defendants Challis conveyed said property by (recorded) deed dated February 1, 1963 to defendant Dover.

Defendant Dover executed and delivered a (recorded) deed of trust as security for the payment to defendants Challis of $6,000.00 plus interest, payable in installments as set forth. (Note: Nothing in the pleadings or evidence purports to identify the trustee in this deed of trust.)

Plaintiff offered in evidence certain documents referred to in its allegations, to wit:

1.   Agreement dated December 8, 1961 between Herbert Howze and wife, Viola R. Howze, jointly and severally "called PURCHASER," and Institute for Essential Housing, Inc., a New Jersey corporation with its principal place of business in Wayne, Pennsylvania, "called INSTITUTE." It provides that INSTITUTE will furnish the materials and build for PURCHASER a house of the nature and description therein specified on property of PURCHASER located on Erie Street, Charlotte, North Carolina. It provides that PURCHASER will pay for "materials furnished and construction services" a "total time sale price" of $10,908.84 in monthly installments as set forth in a promissory note to be executed by PURCHASER. It contains this provision: "PURCHASER warrants that he owns the above described property free and clear of all liens and encumbrances . . ." It was executed in behalf of INSTITUTE "By: DOGGETT LUMBER COMPANY, Authorized Builder (Agent) BY: PAUL J. BOWERS, Sales Mgr."

2.   Promissory note dated December 8, 1961 for $10,908.84, executed by Herbert Howze and Viola R. Howze, payable to INSTITUTE or order, in 144 successive monthly installments of $75.86 each, "commencing on the 1st day of February 1962, and on the same day of each month thereafter until fully paid, except that the final payment shall be the balance then due on this note." On the reverse side of this promissory note the following appears:

"WITHOUT RECOURSE
Pay to the Order of
CERTAIN-TEED PRODUCTS CORPORATION
Institute for Essential Housing, Inc.
By
Authorized Signer

WITHOUT RECOURSE
Pay to the Order of
COMMERCIAL INVESTMENT TRUST INCORPORATED
Certain-teed Products Corporation
By
Authorized Signer."

3.   Deed of trust dated December 8, 1961 from Herbert Howze and wife, Viola R. Howze, to R. E. McDaniel, Trustee, on the Erie Street property, as security for the payment of said promissory note for $10,-908.84. This deed of trust contains full warranties, including specifically a warranty that the premises "are free and clear of all encumbrances."

This deed of trust was recorded December 18, 1961 in Book 2297, Page 289, Mecklenburg Registry.

Allegations of the complaint, *denied* by appellants in their answer, include the following:

1.   That plaintiff is a corporation organized and existing under the laws of the State of Maryland.

2.   That the Institute for Essential Housing, Inc. was "a wholly owned subsidiary corporation of the plaintiff," and on July 1, 1963 "was merged into the plaintiff"; and that plaintiff "has thus become the owner and holder of" said $10,908.84 note.

3.   That the Institute for Essential Housing, Inc. paid to or for the benefit of defendants Howze the sum of $3,604.31, "which sums were advanced under the ($10,908.84) note and deed of trust . . . and were used to start construction of a house" on said property.

4.   That defendant Herbert Howze, on or about the time construction was begun on said house, entered into an agreement with Sanders "whereby the defendants Howze would not be required to make their monthly payments to the said Sanders until the construction of said house was completed . . ."

5.   When Sanders "instituted" said foreclosure proceedings under the deed of trust to Sedberry, Trustee, he knew "that the said house was under construction and . . . in a stage of partial completion."

6.   That "the price of $300.00 received at said foreclosure sale for the . . . property was grossly inadequate, the fair market value thereof at the time of said sale being at least $5,000."

7.   That the publication of the notice of (foreclosure) sale in the Mecklenburg Gazette was not calculated to, and did not, bring the sale to the attention of prospective purchasers; that the Mecklenburg Gazette was not a newspaper of general circulation; and that the Mecklenburg Gazette did not meet the minimum requirements set forth in G.S. 45-21.17 and G.S. 1-597. (Note: During the trial, it was stipulated "that the Mecklenburg Gazette is a newspaper duly published in Mecklenburg County, North Carolina, and qualified to carry Legal Notices, including Legal Notices of Foreclosure.")

Appellants' answer alleges, *inter alia,* that defendant Lynn S. Challis was a bona fide purchaser of the property for a valuable consideration from Sanders.

Evidence was offered by plaintiff and by appellants.

The court submitted and the jury answered the following issues:

"1.   Did the defendant R. M. Sanders agree with Herbert Howze that no payment of the note from Howze and wife to R. M. Sanders

would be required until the home on the property was completed, as alleged in the complaint? Answer: Yes.

"2. Was the amount of $300.00 paid by R. M. Sanders at the foreclosure sale on March 5, 1962, an inadequate and inequitable price for said property, as alleged in the complaint? Answer: Yes.

"3. Was the defendant Lynn S. Challis a bona fide purchaser for value of the property from the defendant R. M. Sanders, as alleged in the answer? Answer: No.

"4. Was the defendant S. A. Dover, Jr., a bona fide purchaser for value of the property? Answer: No."

The court entered judgment containing the following (summarized except when quoted) provisions:

It ADJUDGES null and void (1) the deed from Sedberry, Trustee, to Sanders; (2) the deed from Sanders to Lynn S. Challis; (3) the deed from defendants Challis to Dover; (4) the deed of trust from Dover to a trustee (unidentified) securing a balance purchase price note to Lynn S. Challis; and (5) the foreclosure sale of March 5, 1962, "which foreclosure sale has been preliminarily reported in Trustee's Sale Book 20, at Page 538 . . ."

It appoints commissioners to conduct a new foreclosure and to disburse the proceeds of sale in the following order of priority:

1. Balance (amount not stated) due Sanders on note secured by the deed of trust to Sedberry, Trustee.

2. "The indebtedness due the plaintiff . . . in the amount of $3,-604.31, plus interest . . . , said debt being secured by the deed of trust" to McDaniel, Trustee.

3. "The sum of $605.00 paid by Herbert Howze to R. M. Sanders . . ."

4. "The sum of $2,500 . . . to the defendant Lynn S. Challis for improvements made by her to the property during the fall of 1962."

5. "The balance, if any, to S. A. Dover, Jr."

It orders: (1) that rents from said property be paid to the clerk pending confirmation of such foreclosure sale by commissioners; and (2) that the costs of the action be taxed against Sanders.

Defendants Sanders, Challis and Dover excepted and appealed.

*Dockery, Ruff, Perry, Bond & Cobb for plaintiff appellee.*
*J. C. Sedberry for R. M. Sanders, Lynn S. Challis, T. Fred Challis and S. A. Dover, Jr., defendant appellants.*

BOBBITT, J. Before considering directly the questions presented, it seems appropriate to advert to the following uncontroverted matters.

(1)   The deed of trust to Sedberry, Trustee, duly recorded since 1959, was a valid first lien on the property described therein.

(2)   Plaintiff did not seek a personal judgment against defendants Howze on their $10,908.84 promissory note to Institute. (Note: Defendants Howze made no payment on said $10,908.84 promissory note.)

(3)   The foreclosure by Sedberry, Trustee, is attacked solely by plaintiff, allegedly the owner and holder of the $10,908.84 second lien promissory note.

(4)   According to the terms of the $595.00 note secured by the deed of trust to Sedberry, Trustee, the entire unpaid balance, $145.00 plus interest, was past due and in default at the time of the alleged agreement between defendant Herbert Howze and Sanders and at the time of the foreclosure proceedings.

We consider first appellants' contention, based on appropriate exception and assignment of error, that plaintiff's action should have been nonsuited. The rules applicable in the consideration of the evidence when passing on a motion for nonsuit are well settled. 4 Strong, N. C. Index, Trial § 21. It is noted that a plaintiff must make out his case *secundum allegata*. His recovery, if any, must be based on the allegations of his complaint. *Nix v. English*, 254 N.C. 414, 421, 119 S.E. 2d 220, and cases cited.

The complaint attacks the foreclosure on the grounds considered below.

Plaintiff, relying on the alleged oral agreement between defendant Herbert Howze and Sanders, contends the debt secured thereby was not in default at the time the deed of trust to Sedberry, Trustee, was foreclosed.

With reference to the alleged agreement, defendant Herbert Howze, a witness for plaintiff, testified in substance as follows:

He had a conversation with Sanders "about (his) plan to build a house through the Institute for Essential Housing, on the lot." On the occasion of such conversation, he offered to pay Sanders $20.00 to apply on the then unpaid balance of $145.00 and interest; that Sanders would not take the $20.00 so offered, stating he (Howze) would "probably . . . need this money for something else" and it would be all right for him to wait until the house was completed and then pay the entire balance. At one time, he referred to the conversation as having taken place "the latter part of 1961" before "they started to build the house." Later, he testified that during the conversation he told Sanders

"they had started the house." Later, he testified the conversation was in December 1961 or in January 1962.

Howze testified further that, after said conversation, Sanders made no demand for payment; that, when construction was in progress, he (Howze) visited the lot about twice a week; and that he had no notice of the foreclosure prior to completion thereof.

Howze on cross-examination testified: His last payment to Sanders was made on October 9, 1961. His conversation with Sanders was "around the early part of February 1962." He testified: "It was in February that I offered (Sanders) $20.00."

While not pertinent in passing upon the motion for judgment of nonsuit, it seems appropriate to say that Sanders' testimony was in direct conflict with that of Howze.

It is noted: Howze testified to *one* conversation with Sanders concerning the matters referred to above. Too, apart from Howze's testimony concerning such conversation, there is no evidence that Sanders, prior to completion of the foreclosure, had knowledge or notice that a house was being built on the lot.

Conceding the sufficiency of the evidence to support a finding that Sanders assured defendant Herbert Howze that he need make no further payments until the house was completed, the evidence discloses no consideration sufficient to support a contract enforceable in law. *Craig v. Price,* 210 N.C. 739, 188 S.E. 321; *Woodell v. Davis,* 261 N.C. 160, 134 S.E. 2d 160. The debt was and had been past due. There is no evidence defendant Herbert Howze made any promise of any kind to Sanders.

There was evidence neither defendants Howze nor the holder of their $10,908.84 note secured by the second lien deed of trust to McDaniel, Trustee, were given personal notice of the foreclosure sale. However, "(i)n the absence of a valid contract so to do, there is no requirement that a creditor shall give personal notice of a foreclosure by sale to a debtor who is in default." *Woodell v. Davis, supra,* p. 163, and cases cited. Nor, under such circumstances, is there any requirement that personal notice of such sale be given to the holder of a second lien deed of trust.

We need not determine whether, under the circumstances, a failure to give personal notice to defendant Howze would constitute inequitable conduct as between Sanders and defendants Howze. Defendants Howze have not attacked the foreclosure. There is no evidence that Doggett Lumber Company (Doggett) or Institute or plaintiff had any dealings of any kind with Sanders prior to completion of the foreclosure.

The agreement, if any, was between Sanders and defendants Howze. Obviously, it was not made for the benefit of Doggett or Institute or

plaintiff. Defendants Howze, in their agreement of December 8, 1961 with Institute and in their deed of trust to McDaniel, Trustee, represented that they owned the lot free and clear of encumbrances. Probably, the disclosure of the alleged (oral) agreement would have resulted either in full payment to Sanders or in immediate discontinuance of negotiations between defendants Howze and Institute. Indeed, *the delay in foreclosure,* coupled with the failure to determine by search of the records that the deed of trust to Sedberry, Trustee, was the first lien, were the primary causes of plaintiff's present plight.

"If the contract was not made for the benefit of the third party, he has no cause of action upon the contract to enforce it, or sue for its breach." *Trust Co. v. Processing Co.,* 242 N.C. 370, 379, 88 S.E. 2d 233; *Land Co. v. Realty Co.,* 207 N.C. 453, 177 S.E. 335. "The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." 17 Am. Jur. 2d, Contracts § 304; 17A C.J.S., Contracts § 519(4)c.

.: Appellants contend further the foreclosure sale was invalid because the clerk did not confirm the sale or order that Sedberry, Trustee, execute and deliver a deed to Sanders, the purchaser. With reference to said contention, we consider first whether, under the provisions of G.S. Chapter 45, Article 2A, such confirmation or order was required as a prerequisite to consummation of such foreclosure in accordance with law.

It is noted: An allegation in the complaint and a recital in the judgment indicate that a preliminary report of the foreclosure sale (of March 5, 1962) by Sedberry, Trustee, was filed in the office of the clerk as required by G.S. 45-21.26. No upset bid was filed with the clerk. See G.S. 45-21.27.

This Court held "that the powers of supervision and control conferred upon the clerks of the Superior Court" by C.S. 2591, later G.S. 45-28, "did not arise . . . unless and until there had been the advanced bid specified in the statute paid into the hands of said clerk." *Lawrence v. Beck,* 185 N.C. 196, 116 S.E. 424; *Foust v.. Loan Asso.,* 233 N.C. 35, 62 S.E. 2d 521, 22 A.L.R. 2d 975; *In re Sermon's Land,* 182 N.C. 122, 108 S.E. 497; *Pringle v. Loan Asso.,* 182 N.C. 316, 108 S.E. 914. G.S. 45-28 was repealed expressly by Chapter 720 (Section 5) of Session Laws of 1949. The 1949 Act is a comprehensive statute relating to sales under a power of sale in a mortgage, deed of trust or conditional sale contract. Its provisions constitute Article 2A of Chapter 45 of the General Statutes, being G.S. 45-21.1 through G.S. 45-21.33. It is expressly provided that Article 2A "does not affect any right to foreclosure by action in court, and is not applicable to any such action." G.S. 45-21.2. (Note: G.S. Chapter 1, Article 29A, relates expressly to "Judicial Sales.") If a

trustee fails to report a foreclosure sale within the five days as directed
by G.S. 45-21.26, the clerk is authorized to compel such report. G.S. 45-
21.14; *Gallos v. Lucas,* 252 N.C. 480, 113 S.E. 2d 923. Otherwise, Article
2A confers no authority upon the clerk in respect of an initial foreclo-
sure sale. Supervisory authority conferred by G.S. 45-21.27 relates to
resales and does not arise until an upset bid has been filed with the
clerk as provided therein. G.S. 45-21.29 (h) provides: "When *a resale* of
real property is had pursuant to an upset bid, such sale may not be con-
summated until it is confirmed by the clerk of the superior court. No
order of confirmation may be made until the time for submitting any
further upset bid, pursuant to G.S. 45-21.27, has expired." (Our italics.)

Even so, plaintiff contends that, absent confirmation, the foreclosure
is subject to attack on the ground the bid was inadequate and in-
equitable. G.S. 45-21.34 and G.S. 45-21.35, upon which plaintiff bases
this contention, are provisions of Article 2B of Chapter 45. They are
codifications of Sections 1 and 2, respectively, of Chapter 275, Public
Laws of 1933.

G.S. 45-21.34, in part, provides: "Any owner of real estate, or other
person, firm or corporation having a legal or equitable interest therein,
may apply to a judge of the superior court, prior to the confirmation of
any sale of such real estate by a mortgagee, trustee, commissioner or
other person authorized to sell the same, to enjoin such sale or the con-
firmation thereof, upon the ground that the amount bid or price offered
therefor is inadequate and inequitable and will result in irreparable
damage to the owner or other interested person, or upon any other legal
or equitable ground which the court may deem sufficient."

Actions instituted under G.S. 45-21.34 before the time (ten days) for
upset bid had expired to restrain consummation of such foreclosure in-
clude *Woltz v. Deposit Co.,* 206 N.C. 239, 173 S.E. 587; *Whitaker v.
Chase,* 206 N.C. 335, 174 S.E. 225; *Barringer v. Trust Co.,* 207 N.C.
505, 177 S.E. 795. In *Smith v. Bryant,* 209 N.C. 213, 183 S.E. 276, ac-
cording to the record on file in this Court, the action was instituted Oc-
tober 31, 1933, to restrain the trustee from executing a deed to the pur-
chaser pursuant to a foreclosure sale he had conducted on October 21,
1933.

In *Whitford v. Bank,* 207 N.C. 229, 176 S.E. 740, the factual situa-
tion under consideration was as follows: A foreclosure sale had been
conducted by the trustee in accordance with the power of sale confer-
red in a deed of trust executed by plaintiffs. No upset bid was filed. The
trustee consummated the sale by the execution and delivery of a deed
to the purchaser. Nothing in the record indicates the clerk confirmed
the sale or directed the execution of such deed. Subsequently, the
plaintiffs instituted the action ·to cancel and set aside the trustee's

deed on the ground, *inter alia,* the amount of the purchaser's bid was inadequate and inequitable. This Court, in opinion by Schenck, J., said: "Chapter 275, Public Laws of 1933, has no application to this case, since the sale had been made and confirmed and the deed from the trustee to the purchaser had been of record for approximately three months before the institution of this action . . ." It seems clear this Court considered the word "confirmation," as used in said statutory provision, to mean final consummation in accordance with law.

In *Loan Corporation v. Trust Co.,* 210 N.C. 29, 185 S.E. 482, the action was to recover a deficiency judgment. Section 3 of Chapter 275, Public Laws of 1933, now G.S. 45-21.36, was directly involved. However, the following from the opinion of Connor, J., is in full accord with the decision in *Whitford v. Bank, supra, viz.:* "In sections 1 and 2 of the Act it is provided that where real property has been offered for sale by a mortgagee, or by a trustee under the power of sale contained in a mortgage or deed of trust, and the sum bid at such sale is inadequate, and for that reason *the consummation* of the sale would be inequitable, because it would result in irreparable damage to the mortgagor or grantor in the deed of trust, or to any other person having a legal or equitable interest in the property, the mortgagor, or the grantor, or any other interested person, *at any time before the consummation* of the sale, may apply to a judge of the Superior Court for an order enjoining *the consummation of the sale,* and that in such case the judge of the Superior Court may enjoin *the consummation of the sale,* and may order a resale of the property by the mortgagee, by the trustee, or by a commissioner appointed by him for that purpose, upon such terms as he may deem just and equitable." (Our italics.)

In our view, "confirmation," as used in G.S. 45-21.34 refers only to a foreclosure sale where confirmation is required for consummation in accordance with law. Where a foreclosure sale is conducted in accordance with the provisions of Article 2A of Chapter 45 of the General Statutes, and no upset bid is filed as provided in G.S. 45-21.27, there is no legal requirement that the clerk either confirm the sale or direct the execution of a trustee's deed as a prerequisite to legal consummation of such sale by the trustee.

Evidence relating to the basis of plaintiff's claim and the status and value of the property on March 5, 1962, the date of the foreclosure sale, is summarized below.

Mr. Grier, an officer of Doggett, testified that Doggett, under its arrangements with Institute and with plaintiff, furnished the materials (Certain-teed) and construction services; that the first materials were delivered to the job on January 24, 1962; that construction was stopped "shortly after the first of April 1962" when Doggett first learned

of the Sanders mortgage; and that, at that time, "the outside of the house was completed, the rough plumbing was in and the rough wiring was in." Mr. Grier testified he saw Sanders and offered "to reimburse him his expense, $300.00," if he would deed the house back to Howze; and that Sanders, in reply, stated "that the lot was worth about $1,200 and that's what he wanted." (Note: The complaint alleges that "Sanders offered to sell said property back to the defendants Howze for the price of $1,250.00.")

Mr. Grier testified that the Institute paid Doggett $3,604.31 for the materials and labor it had furnished to the Howze lot; and that ". . . we sent in an estimate of the work completed on the house and were reimbursed for that."

There was testimony that Institute, prior to June 1962, was plaintiff's wholly owned subsidiary, and at that time was absorbed by plaintiff, the parent company.

Referring to his conversation with Mr. Grier, Sanders testified, *inter alia,* as follows: ". . . I asked him why he built a house on a lot that I owned. He said he didn't know I owned it. I said, 'Well, do you not, when you build a house that way, have the record looked up to see whether it's free and clear or not?' He said, 'The company I do business with carries insurance.'" No question was asked Grier as to why construction was commenced without first making a search of the title or obtaining a report thereon.

Concerning values: Grier testified that, when construction stopped around April 1, 1962, the house and lot, in his opinion, "were worth $4,600." "Since that time," he testified, "somebody has increased the value of it by $2,400." (Note: Appellants offered evidence tending to show that, pursuant to work begun on September 7, 1962, the house was completed and made ready for occupancy at a cost to defendant Lynn S. Challis of "around $2500.00.") In Grier's opinion, at the time of trial, the house and lot were worth $7,000.00.

Mr. English, employed by Institute as a supervisor, testified he inspected the Howze lot the latter part of January 1962 and again the latter part of March 1962; that, in his opinion, the fair market value of the lot, including labor and materials, was "around $3,000" at the time of the January inspection and "conservatively $5,000.00" at the time of the March inspection. He testified that in his opinion the fair market value of the house and lot at the time of trial was "approximately $5,500 to $6,500."

The only testimony as to the value of the lot alone at the time of the foreclosure sale was the testimony of Sanders to the effect the fair market value thereof was "$1,250.00." Sanders testified the property

was worth "somewhere around $2500.00" when he sold it to defendant Lynn S. Challis, his daughter.

Plaintiff's allegations and evidence in respect of the inadequacy of the bid must be considered in the light of well established legal principles stated by Barnhill, J. (later C. J.), in *Foust v. Loan Asso., supra,* as follows:

"Mere inadequacy of the purchase price realized at a foreclosure sale, standing alone, is not sufficient to upset a sale, duly and regularly made in strict conformity with the power of sale. *Weir v. Weir,* 196 N.C. 268, 145 S.E. 281; *Roberson v. Matthews,* 200 N.C. 241, 156 S.E. 496; *Hill v. Fertilizer Co.,* 210 N.C. 417, 187 S.E. 577.

"Even so, where there is an irregularity in the sale, gross inadequacy of purchase price may be considered on the question of the materiality of the irregularity. *Hill v. Fertilizer Co., supra,* and cases cited.

"Speaking to the subject in *Weir v. Weir, supra,* Stacy, C.J., says: 'But gross inadequacy of consideration, when coupled with any other inequitable element, even though neither, standing alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice between the parties. *Worthy v. Caddell,* 76 N.C. 82, 70 A. & E. (2 Ed.) 1003; note: 42 L.R.A. (N.S.) 1198'; *Bundy v. Sutton,* 209 N.C. 571, 183 S.E. 725; *Roberson v. Matthews, supra.*"

Here, no alleged irregularity in the foreclosure is supported by evidence. Moreover, Sanders was under no legal obligation to plaintiff or its predecessors in interest except to conduct and consummate the foreclosure sale in accordance with law.

It should be noted that the complaint does not allege fraudulent conduct or facts sufficient to constitute fraud.

In view of the basis of decision, we do not discuss serious questions as to the sufficiency of the issues and as to whether the verdict supports the judgment. However, it is noteworthy that all issues relate solely to features of plaintiff's attack on appellants' positions and that answers thereto do not establish or relate to whether plaintiff has the status and rights it asserts.

With some reluctance, we reach the conclusion that appellants' motion for nonsuit should have been granted. Under this decision, it appears that Sanders (excluding costs of litigation) will reap where he did not sow. Yet, it appears he was willing to negotiate a settlement of the confused situation caused in large measure by (1) the failure of defendant Herbert Howze to disclose the existence of the Sanders deed of trust to Doggett or Institute and (2) the failure of Doggett or Institute to check the title or obtain a report thereon. Moreover, if plaintiff should prevail, the value of its security would be substantially enhanced by the expenditures made by defendant Lynn S. Challis in com-

pleting the house. (Note: The evidence indicates this action was instituted *after* defendant Lynn S. Challis had completed the house.)

Since the parties decided to "square off" and stand on their asserted legal rights, the decision must be in accord with established legal principles without regard to consequences. For the reasons stated, the verdict and judgment are set aside, and the cause is remanded with direction that judgment of involuntary nonsuit be entered.

Reversed.