.816

**JACKSON v. FULLER et al.***

No. 6656.

United States Court of Appeals for the District of Columbia.

Decided Aug. 31, 1936.

Garfield C. Thompson, of Washington, D. C., for appellant.

Herman Miller, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia[1] dismissing, upon the ground that no cause of action was stated therein, an amended bill of complaint in equity. The general purpose of the bill was to set aside a foreclosure sale of real property. Other incidental relief was prayed for.

The complaint is lacking in brevity and clarity. We endeavor below, except where we quote, to state its allegations, *seriatim,* in substance and effect, with such elimination of redundancy as is consistent with fair reflection of apparent intended meaning:

"The appellant in 1923 purchased a house and lot in the District of Columbia, subject to a first deed of trust securing a note in the principal sum of $3000.00, and subject also to two junior encumbrances not material here. The note, executed June 20, 1921, bore interest at 7%, payable semi-annually, and interest at 7% on each installment of interest after default therein. It provided also for acceleration of the maturity date at the election of the holder in the event of default in any of the payments. The note matured three years after date, but it was renewed every three years, for a time upon the payment by the appellant of a 2% bonus, but thereafter without such bonus. The first deed of trust provided that the holder of the note might discharge when due any lien or obligation upon the property, such as taxes and insurance, and that upon failure of the owner of the property to pay upon demands sums so advanced, with 7% interest, the holder of the note might at his option accelerate the maturity date. Such advances were to bear interest at 7% until paid.

"In January, 1932, the appellant, having fallen into arrears in respect of interest and taxes, entered into an agreement with the then holder of the note, one of the ap-

[1] Now named the District Court of the United States for the District of Colum-

bia. Public No. 796, 74th Congress, approved June 25, 1936.

*Writ of certiorari denied 57 S. Ct. 236, 81 L. Ed. ——.

pellees, Timberlake, 'to the effect that if the said plaintiff [appellant] would make smaller payments when and as convenient, on the Semi-annual interest and Taxes, he would not foreclose under the terms of the Trust . . . .' The appellant made a number of such 'smaller payments' until the latter part of 1934, when Timberlake transferred the note to the appellee Fuller for the sum of $1000.00, and Fuller, in turn, transferred it to the appellee Washington Housing Corporation. At the time of these transfers both Fuller and the Washington Housing Corporation knew that the interest was almost a year in arrears, that a total of $1,224.13 in taxes was due and unpaid, and that a tax deed was outstanding for the year 1925 in the sum of $65.25. Both Fuller and Washington Housing Corporation knew of the agreement not to foreclose. The transfers from Timberlake to Fuller and Fuller to the Washington Housing Corporation were made to prevent the appellant setting up the agreement as a defense to foreclosure, and to defeat the appellant's equities. In reality Timberlake is still the beneficial owner of the note.

"On December 3, 1934, Fuller notified the appellant that he had acquired the note, that interest and taxes were in arrears and that he intended to institute proceedings unless the taxes, and the semi-annual interest payment due December 20, 1934, were paid. On December 5, 1934, and on specified dates thereafter, but without written notice to the appellant, the property was advertised for sale. In order to ward off the impending foreclosure the appellant on December 17, 1934, filed in the Supreme Court of the District of Columbia a bill of complaint [not the bill of complaint in the instant case] for an injunction, and a rule to show cause was issued and served upon all of the appellees except the appellee Richardson before the sale. But through 'inadvertence, misapprehension, mistake, or oversight' a temporary restraining order was not obtained and a bond was not posted. On the same date, December 17, 1934, the property was 'by reason of the facts stated, wrongfully, wickedly, and fraudulently sold' at public auction by the appellee Chiswell, the survivor of two trustees named in the first trust deed, to Richardson, the latter being given a deed dated December 18, 1934. There were few persons at the sale—only two besides the note holder and those present in an official ca-

pacity. Though the property was sold to Richardson in her own name, she in effect purchased it for Fuller and Washington Housing Corporation. The property was sold for a grossly inadequate sum. The assessed value of the property was $4528.-00—$1728.00 for the land, and $2800.00 for the improvements. It was worth $6000.00 or more."

After setting forth the foregoing, the bill of complaint charged [we here quote]:

"The said plaintiff is advised, believes, and therefore avers, that the said defendants Fuller and or said Housing Corporation actually secured the said property hereinbefore described for the grossly inadequately sum or price of about $1000.-00 cash plus expenses of said public auction sale. The said $1000.00 cash being the said amount, alleged to have been paid for said note, if said note was actually sold and bought as aforesaid. The aforesaid holder of note Fuller for himself individually, or for aforesaid defendant Arline Richardson, individually, or in her name for the aforesaid Housing Corporation, run the price up to $1500.00 at the aforesaid Auction sale subject to $1224.-13 Tax liens. No cash other than the aforesaid expenses of the aforesaid public auction sale, was paid as a result of the aforesaid sale other than the aforesaid $1000.00, nothing having been paid to the owner of the aforesaid property, as a result of the aforesaid public auction sale. At most the aforesaid $1500.00 plus taxes aforesaid, $1224.13, which could in a great measure be liquidated, in monthly payments, or other installments, plus aforesaid auction sale expenses, would aggregate about $2800.00, or in any event, less than one half of price of the aforesaid property. No taxes had been paid up to the date of RETURN OF RULE TO SHOW CAUSE, (Dec. 26, 1934). So that in any event the aforesaid property was bought in reality for aforesaid $1000.00 paid for aforesaid note plus aforesaid actual public auction sale expenses, of probably less than $100 actually paid."

The appellant prayed that: The interest provided for in the note be forfeited on the ground of usury; the foreclosure sale be set aside, the deed to the appellee Richardson cancelled, and a decree entered ordering reconveyance of the property to the appellant; the present holders of the note be decreed to hold it subject to the agreement not to foreclose; the appellees Ful-

ler, Washington Housing Corporation and Richardson be enjoined from selling, encumbering or altering the property; all of the appellees be required to disclose their true relationship in respect of the purchase of the note, and of the property at the foreclosure sale, and to reveal who was the beneficial owner of the note at the time of the foreclosure sale and who was the beneficial purchaser of the property; an accounting be had and such incidental relief granted as the court may deem proper.

 The appellant's bill seems to attempt to combine two causes of action—the first to have declared invalid those provisions of the note which require interest on unpaid interest installments, and the second to set aside the foreclosure sale. If the general assignment of errors may be said to cover the trial court's ruling on the first cause of action asserted—there was no specific assignment on such ruling—still the appellant makes no argument in her brief in respect of that ruling. We, therefore, treat any point which may be said to be raised thereunder as abandoned. In respect of the second asserted cause of action, the questions raised by the assignment of errors and argued in the briefs are as to the effectiveness of the agreement not to foreclose, and the validity of the foreclosure sale.

 As to the agreement not to foreclose: The contention of the appellant is that by virtue thereof the note had not matured at the time of the foreclosure sale. We think this without merit. It is not possible to determine from the allegations of the bill whether the last renewal of the note was on June 20, 1930, or on June 20, 1933. The bill says merely that the note was renewed every three years. But in either event the asserted agreement cannot help the appellant. It was, as alleged, entered into on January 11, 1932. If the last renewal was on June 20, 1933, i. e., subsequent to the asserted agreement, the parol evidence rule would intervene, and the parties be bound to the terms of the note as renewed, into which must be taken to have merged all antecedent transactions. Ryan v. Security Savings & Commercial Bank, 50 App.D.C. 292, 271 F. 366; Dick v. Marx & Rawolle, 55 App.D.C. 267, 4 F.(2d) 879, certiorari denied, 268 U.S. 688; 45 S.Ct. 509, 69 L.Ed. 1158; 5 Wigmore on Evidence, 2d Ed. §§ 2425–2449. But even if the last renewal was on June 20, 1930, and the agreement not to foreclose therefore provable, as a subsequent agreement, still it was without consideration, because the appellant was promising thereunder to do only what she was already bound to do.

 As to the foreclosure sale: Although the sale is charged to have been made "wrongfully, wickedly, and fraudulently", no facts are set forth in the bill in support of these conclusional characterizations, except those in respect of the price received for, and the value of, the property. It is most difficult to determine the meaning of the allegations of the complaint in respect of the matters alleged to touch the adequacy of the price received for the property, but taking the complaint "to mean what it fairly conveys to a dispassionate reader by a fairly exact use of English speech," Swift & Co. v. United States, 196 U.S. 375, 395, 25 S.Ct. 276, 49 L. Ed. 518, we think the charge was that the appellant was without knowledge as to precisely what the property sold for, but that she did know that it was for a sum not greater than $1500.00 plus $1224.13, tax obligations against the property, plus approximately $100.00 expenses of the sale, a total of $2824.13, or for the sum of $1,-000.00 plus the other items mentioned, a total of $2324.13. But giving the appellant the benefit of the lower of the two totals, her bill, in the absence of an assertion of facts showing misconduct on the part of the trustee affecting the fairness of the sale, or showing violation of the terms of the trust, does not warrant our saying as a matter of law that the sale was bad. We cannot set aside a foreclosure sale on the basis of inadequacy of price alone, unless the inadequacy is such "as to shock the conscience and of itself suggest fraud or misconduct . . .." Anderson v. White, 2 App.D.C. 408, 418; Hunt v. Whitehead, 19 App.D.C. 116; Smith v. Pickford, 66 App.D.C. 206, 85 F.(2d) 705, decided by this court, July 20, 1936. The lesser total, $2324.13, is more than 50 per centum of the asserted assessed value of the property, $4528.00, and more than 38 per centum of the asserted actual value of $6000.00. Neither percentage can be held in respect of a forced sale shockingly inadequate. There is, and indeed can be, no hard and fast rule as to what reduction below appraised or actual value must exist to characterize a foreclosure sale price as inadequate as a matter of law.

Each case must rest on its own facts. It may be noted, however, that where courts have held a sale price so low as to shock the conscience of the court, the discrepancy between the sale price and the value of the property has in most instances been much greater than in the instant case; and on the other hand where the discrepancy has been not greatly different from that in the instant case, the courts have usually upheld the sale. For a collection of cases on this subject see 41 C.J. 1028, note 99. See also for a discussion of the subject of inadequacy of mortgage foreclosure sale prices the annotation in 8 A.L.R. 1001, et seq.

In accordance with the foregoing the decree of the trial court dismissing the amended bill of complaint is

Affirmed.