**AMERICAN CENTURY MORTGAGE INVESTORS, Appellant,**

v.

**UNIONAMERICA MORTGAGE AND EQUITY TRUST et al.,**
**Appellees.**

**Nos. 9446, 9630.**

District of Columbia Court of Appeals.

Argued Jan. 7, 1976.

Decided April 13, 1976.

---

Samuel Intrater, Washington, D.C., with whom Albert Brick, Washington, D.C., was on the brief, for appellant.

Alvin Friedman and Richard S. Arfa, with whom Richard J. Medalie and William B. Beebe, Washington, D.C., were on the brief, for appellees. Irving B. Yochelson, Washington, D.C., also filed an appearance.

Before FICKLING and KERN, Associate Judges, and PAIR, Associate Judge, Retired.

KERN, Associate Judge:

Appellant American Century Mortgage Investors [ACMI] appeals from the entry of two orders granting summary judgment in favor of appellees. The first order, entered February 3, 1975, decreed that appellees' liens were superior and prior to appellant's lien on the subject property, 425 Eye Street, N.W., located at lot 57, square 516 in the District of Columbia. The second order, entered April 11, 1975, granted appellees' motion for summary judgment declaring that the foreclosure sale of the subject property was valid and proper and denied appellant's motion to invalidate the sale.[1]

On June 24, 1971, ACMI loaned $1.5 million to the Chester Arthur Corporation to enable it to purchase the subject property, and to secure the loan ACMI received a deed of trust that was duly recorded the next day.[2] Sometime later, Chester Arthur applied to the Royal National Bank [Royal] for a $9.4 million construction loan. Royal agreed to lend this money on two conditions: (1) that Royal's loan be se-

---

1. On August 26, 1974, a different judge had denied a motion made by appellant in its complaint filed August 7, 1974, requesting that a receiver be appointed by the court to manage the property pendente lite, that the foreclosure sale be enjoined, and that the trustee of the property be removed. Appellant apparently does not contest this ruling.

2. See D.C.Code 1973, § 45–601.

cured by the first lien on the property and (2) that ACMI's deed of trust be subordinate to Royal's deed of trust. On October 8, 1971, an agreement was entered into between *inter alia* ACMI and Royal, which stated that the ACMI deed of trust was coordinate and equal to the Royal deed of trust, except as otherwise provided. Paragraph three of the agreement did provide otherwise, for it stated that the ACMI deed was to be subordinate upon maturity; that is, in the event of default the Royal deed was to be paramount and superior.

In the summer of 1972, Chester Arthur defaulted on the Royal loan after $5.4 million had been advanced. The lenders all agreed to forebear from foreclosure and to enter an agreement with 425 Eye Street Associates [Associates], Chester Arthur's successor. An additional $3.8 million was to be loaned by Girard Bank of Philadelphia [Girard], and a second coordinate lien agreement was executed. This second agreement was substantially identical to the first, except that ACMI's deed of trust was subordinated at maturity to *both* the Royal and Girard deeds of trust.

In 1973, Associates defaulted on its obligations and in July, 1974, Unionamerica Mortgage and Equity Trust [UMET], successor to Royal and Girard, filed notice of intent to sell the property at a foreclosure sale. On August 7, 1974, appellant sued UMET, Associates, and others, claiming that the first coordinate loan agreement was invalid for lack of consideration and that consequently its deed of trust had priority. The property was sold, after public notice, at a foreclosure sale on August 26, 1974, for $4.6 million.

In its order of February 3, 1975, the trial court ruled that ACMI was estopped from challenging the validity of the first coordinate lien agreement, since ACMI induced Royal to loan $9.4 million to Chester Arthur by agreeing to allow Royal's lien to take precedence over the existing ACMI lien. The elements of a claim of equitable estoppel were described in *Parker v. Sager*, 85 U.S.App.D.C. 4, 8,

174 F.2d 657, 661 (1949). With reference to the party to be estopped, the elements are:

(1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. [*Id.* quoting 19 Am.Jur.*Estoppel* § 42.]

There was evidence introduced at the hearing on appellees' motion for summary judgment indicating that ACMI knew that Royal would not lend money for construction of a building on the subject property unless Royal received a first lien on the property. The contract of October 8, 1971, itself stated this condition and there was evidence in the record to this effect in the form of letters and statements by employees of the parties on both sides of the litigation. The evidence thus adduced showed by a clear preponderance that ACMI's agreement to subordinate its lien served as an inducement to Royal to lend funds for construction, and that Royal relied on this inducement to its detriment in making the loan to Chester Arthur, consequently, we are persuaded that the trial court did not err in concluding that ACMI was estopped from challenging the first contract for lack of consideration. *See Solway Decorating Co. v. Merando, Inc.*, D.C.App., 264 A.2d 501 (1970); *Parker v. Sager, supra; Goodman v. Dicker*, 83 U.S.App.D.C. 353, 169 F.2d 684 (1948).

As to the second contract, which subordinated ACMI's lien to the interests

of both Royal and Girard, the trial court found that ACMI was also estopped from attacking the validity of this contract, and that alternatively there was actual consideration for the contract arising from appellees' foregoing their right to foreclose. As with the first contract, the evidence indicates that Girard was induced to lend construction money to Associates in reliance on ACMI's agreement to subordinate its lien to Royal and Girard. Since we agree that ACMI's conduct in entering the second contract estops it from attacking the validity of this contract also,[3] we need not determine whether appellees' forebearing from foreclosure constituted consideration for this second contract.

Since ACMI is estopped from challenging both agreements with Royal and Girard, the trial court correctly ruled that, pursuant to the agreements, their deeds of trust were prior in lien to that of ACMI. The total amount derived from the sale of the property, when credited against appellees' liens, was insufficient to satisfy these prior liens, and therefore appellant's lien was extinguished. *See Rosslyn Steel & Cement Co. v. Etchison,* 61 App.D.C. 43, 57 F.2d 409, *cert. denied,* 287 U.S. 614, 53 S.Ct. 17, 77 L.Ed. 534 (1932); D.C.Code 1973, § 45–617. As no genuine issue of material fact concerning this claim remained,[4] the award of summary judgment in favor of appellees was appropriate. *Yates v. District Credit Clothing, Inc.,* D. C.App., 241 A.2d 596 (1968); Super.Ct. Civ.R. 56.

Appellant also claims that the trial court erred in refusing to invalidate the foreclosure sale. Specifically, ACMI alleges there were several irregularities in the conduct of the sale, including the facts that (1) the trustee was not a disinterested party but was a member of the law firm representing appellees, (2) prohibitive conditions were imposed in requiring prospective bidders to deposit one million dollars before being allowed to bid, and (3) minimal advertising was used.[5]

In granting appellees' second motion for summary judgment the trial court concluded that no genuine issue as to any material fact existed. The court relied on appellees' statement of material facts, which included the provisions in the deeds of trust in favor of Royal and Girard pursuant to which the foreclosure sale was held. Both agreements provided that upon default:

> . . . the said Trustees or substitute trustees shall have the power and duty to sell . . . the aforesaid land and premises and improvements at public auction at such time and place, upon such terms and conditions, and after such previous public notice, . . . as the Trustees, or substitute trustees, shall deem best for the interest of all parties concerned . . . .

Both agreements also stated that:

> The Trustees may act hereunder and may sell and convey said land and premises under power granted by this instrument, although the Trustees have been, may now be and may hereafter be, attorneys or agents of the holder of the Note secured hereby in respect to the loan made by the holder of the Note . . . or in respect to any matter of business whatsoever.

Since the foreclosure sale was conducted in accordance with the terms of the

---

3. *See Solway Decorating Co. v. Merando, Inc., supra; Parker v. Sager, supra; Goodman v. Dicker, supra.*

4. ACMI persistently asserts that both coordinate loan agreements were ambiguous on their faces and in need of judicial construction, and hence that summary judgment could not be entered. As we have stated above, we are satisfied that these agreements clearly stated the purposes of the parties and established the priorities between them.

5. We note that the advertising used in the instant case, publication on five separate days in the Washington STAR, was the exact method approved by the Court of Appeals for the District of Columbia Circuit in *S & G Investment Inc. v. Home Federal Savings & Loan Ass'n,* 164 U.S.App.D.C. 263, 505 F.2d 370 (1974).

deeds of trust authorizing such sale, and since D.C.Code 1973, § 45–615 allows the parties to prescribe "the length of notice and terms of sale," *see S & G Investment Inc. v. Home Federal Savings & Loan Ass'n,* 164 U.S.App.D.C. 263, 505 F.2d 370 (1974), we cannot conclude that the trial court erred in granting appellees' motion for summary judgment declaring the sale valid and proper and in denying appellant's motion to invalidate the sale on these grounds.

Affirmed.